UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT PARHIZGAR and
OZRA ESFANDIARI,

           Plaintiffs,

v.                                               Case No.

DENNIS MANNING,

           Defendant.

_____/

## VERIFIED COMPLAINT

Plaintiffs, ROBERT PARHIZGAR ("**Robert Parhizgar or Owner**") and OZRA ESFANDIARI ("**Ozra Esfandiari or Lender**") (collectively the "**Plaintiffs**"), by and through their undersigned counsel, sue DENNIS MANNING ("**Dennis Manning or Defendant or Trainer**"), and allege:

## JURISDICTION AND VENUE

1.     Robert Parhizgar is an individual residing and domiciled in Lubbock, Texas.

2.     Ozra Esfandiari is an individual residing and domiciled in Lubbock, Texas.

3.     Dennis Manning is an individual residing and doing business in the Middle District of Florida, specifically conducting horse racing/training business at Tampa Bay Downs in Hillsborough County, Florida.

4.     Pursuant to 28 U.S.C. §§ 1331 and 1332, and other applicable law, jurisdiction for this action lies with this Court because it seeks; (a) declaratory judgment and supplemental relief and damages in excess of $75,000.00, exclusive of interest, attorneys' fees, court costs, and related expenses arising from contracts and agreements executed and breached in the Middle

1

District of Florida, and is between citizens of different states; (b) the personal property in issue is located in the Middle District of Florida, and (c) equitable relief related to the same.

5.      There is a complete diversity of citizenship between the Plaintiffs and Defendant, as required by 28 U.S.C. §§ 1331 and 1332, and the amount in controversy required for diversity jurisdiction in this Court has been satisfied as required 28 U.S.C. 1332.

6.      Pursuant to 28 U.S.C. § 1391 and other applicable law, venue is proper in the Middle District of Florida.

7.      All requirements and conditions precedent to the bringing of this action have been satisfied, performed, or waived.

8.      The Plaintiffs have retained the undersigned law firm as counsel of record herein, and have agreed to compensate and reimburse it for services rendered and costs incurred in connection with the enforcement of their rights and remedies as more fully set forth below.

## GENERAL ALLEGATIONS

9.      At all times material hereto, Ozra Esfandiari (Lender) lent money to Robert Parhizgar (Owner) for the purpose of purchasing and the care of thoroughbred race horses (collectively referred to herein as the "**Horses**").

10.    Lender, Ozra Esfandiari, secured a lien on the Horses purchased with her loan money as collateral for the loan made to the Owner to purchase the Horses.

11.    Owner, Robert Parhizgar, purchased eleven (11) Horses with the funds obtained from the Lender.

12.    Owner, Robert Parhizgar, additionally purchased one (1) other Horse using his own funds.

13.     On or about March, 2019, Trainer Dennis Manning, began training the Owner's twelve (12) Horses.

14.     At all times material hereto, Trainer Dennis Manning was aware and had actual knowledge that eleven (11) of the twelve (12) Horses were collateral for a loan.

## COUNT I: DECLARATORY JUDGMENT AND SUPPLEMENTAL RELIEF

15.     The Plaintiffs, Robert Parhizgar (Owner) and Ozra Esfandiari (Lender), hereby re-allege and incorporate by reference paragraphs 1 through 14 above, as if fully set forth herein.

16.     This is a cause of action brought by the Plaintiffs, Robert Parhizgar and Ozra Esfandiari, against Defendant, Dennis Manning, for declaratory judgment and supplemental relief.

17.     Section 86.021, Florida Statutes, states the following with respect to the right to a declaratory judgment:

> Any person claiming to be interested or who may be in doubt about his or her rights under a deed, will, contract, or other article, memorandum, or instrument in writing or whose rights, status, or other equitable or legal relations are affected by a statute, or any regulation made under statutory authority, or by municipal ordinance, contract, deed, will, franchise, or other article, memorandum, or instrument in writing may have determined any question of construction or validity arising under such statute, regulation, municipal ordinance, contract, deed, will, franchise, or other article, memorandum, or instrument in writing, or any part thereof, and obtain a declaration of rights, status, or other equitable or legal relations thereunder.

18.     "The goals of the Declaratory Judgment Act are to relieve litigants of the common law rule that a declaration of rights cannot be adjudicated unless a right has been violated and to render practical help in ending controversies which have not reached the stage where other legal relief is immediately available." *X Corp. v. Y Person*, 622 So. 2d 1098, 1100 (Fla. 2d DCA 1993) (citing *Bell Associated Independents, Inc.*, 143 So. 2d 904 (Fla. 2d DCA

1962)). "To operate within this sphere of anticipatory and preventative justice, the Declaratory Judgment Act should be liberally construed." *Id.* "The test for the sufficiency of a complaint for declaratory judgment is not whether the plaintiff will succeed in obtaining the decree he seeks favoring his position, but whether he is entitled to a declaration of rights at all." *Id.* (citing *Platt v. General Dev. Corp.*, 122 So. 2d 48 (Fla. 2d DCA 1960)).

19.     "Thus, to activate jurisdiction the party seeking a declaration must show that he is in doubt as to the existence or nonexistence of some right, status, immunity, power, or privilege and that he is entitled to have such doubt removed." *Id.* (citing *Flagship Real Estate Corp. v. Flagship Banks, Inc.*, 374 So. 2d 1020 (Fla. 2d DCA 1979)). "In this regard, the plaintiff must show a bona fide, actual, present, and practical need for the declaration." *Id.*

20.     On or about <u>December 31, 2018</u>, Owner executed a Loan Agreement with Lender, whereby Owner borrowed the sum of $334,000.00 from Lender for the purchase of the eleven (11) Horses. A copy of the Loan Agreement is attached hereto as Exhibit "A" and made a part hereof by reference.

21.     Pursuant to the Loan Agreement, Lender is the first lien holder on the Horses.

22.     The Horses secured by the Loan Agreement are commonly identified as:

    a. Snicker Kicker,
    b. Drillomatic,
    c. Sir Seamus,
    d. Power Escapade,
    e. Magical Illusion,
    f. Bushido's Way,
    g. Nothinbutablur,
    h. Blazinonbayou,
    i. Smoke Alarm,
    j. Pushingupdaisies,
    k. Wild Ride.

23.     Owner also purchased and owns a horse commonly identified as "KP Creed".

24.     Owner paid Trainer in full for his services for the months of March and April 2019.

25.     Owner overpaid Trainer for the month of May, 2019 in the amount of $7,112.00.

26.     On or about <u>May 31, 2019</u>, Trainer drafted a Bill of Sale for each of Owner's Horses naming himself as the owner of each horse.

27.     Trainer stated in each Bill of Sale that consideration for each horse was "the sum of $Training Bill Owed." A copy of each Bill of Sale for the Horses is attached hereto as Composite Exhibit "B" and made a part hereof by reference.

28.     The Bill of Sale for horses "Blazinonbayou," "Wild Ride," and "KP Creed" do not contain a Seller's signature. See Composite Exhibit "B".

29.     Owner executed the Bills of Sale based upon the Trainer's assurances that he would be the Horses "paper" owner which would provide Owner additional security for the collateral Horses against any creditors and further provide a convenience to Owner by having the Trainer account for the expenses of training the Horses against the Horses expected revenues.

30.     From June of 2019 to the present, Trainer has failed to send Owner a bill for training services.

31.     From June of 2019 to the present, Trainer has failed to inform and get permission from Owner of when the Horses were entered into races or the "conditions" of each race that the Horses were entered.

32.     From June of 2019 to the present, Trainer has failed to provide an accounting for the revenues generated by the horses.

33.     Upon information and belief, Trainer executed official "Transfers of Ownership" papers on behalf of the Owner as an authorized agent naming himself as the owner of the Horses.

34.     Trainer was not an authorized agent of the Owner when Trainer named himself as the owner of the Horses.

35.     Trainer was not an authorized agent of the Owner for purposes of executing official "Transfers of Ownership" papers as the authorized agent of Owner for each Horse naming himself as the owner of the Horses.

36.     On or about September 15, 2019, Trainer informed Owner via text message that he would accept $50,000.00 as consideration for transferring the Horses back to the Owner.

37.     Owner informed Trainer that he did not have $50,000.00 but he did have a Third Party Buyer willing to pay $90,000.00 for the purchase of "Sir Seamus" and "Drillomatic".

38.     Owner arranged for the Third Party Buyer to contact the Trainer to complete the paperwork for the purchase of the horses.

39.     The Third Party Buyer contacted the Trainer, but the Trainer refused to sell "Sir Seamus" and "Drillomatic".

40.     Thereafter, the trainer ceased all communication with the Owner.

41.     In October of 2019, Trainer gave away "Power Escapade".

42.     On December 1, 2019, Trainer entered "Sir Seamus" in a claiming race at Gulfstream Park and the horse was purchased for the sum of $35,000.00 which Trainer received and kept.

43.     On January 24, 2020, Trainer entered "KP Creed" in a claiming race at Tampa Bay Downs and the horse was purchased for the sum of $5,000.00 which the Trainer received and kept.

44.     On February 20, 2020, Trainer entered "Smoke Alarm" in a claiming race at Gulfstream Park and the horse was purchased for the sum of $50,000.00 which the Trainer received and kept.

45.     On February 21, 2020, Trainer entered "Drillomatic" in a claiming race at Tampa Bay Downs and the horse was purchased for the sum of $25,000.00 which the Trainer received and kept.

46.     Trainer received and kept the sum of $115,000.00 from the sale of five (5) of Owner's Horses.

47.     From June of 2019 until March of 2020, Trainer entered Owner's Horses in thirty-four (34) races which earned the sum of $90,915.00 which the trainer received and kept.

48.     Owner asserts ownership of the Horses.

49.     Trainer asserts ownership of the Horses.

50.     Lender has a security interest in the Horses.

51.     Owner remains indebted to Lender for the full amount of the debt.

52.     Owner and Lender are concerned that Trainer will harm or neglect the Horses during the pendency of this action reducing the value of the Horses.

53.     The Plaintiffs have a bona fide, actual, present, and practical need for a declaration by this Court stating that the Owner is the owner of the Horses.

54.     The parties are in doubt as to the ownership of the Horses based upon the Bills of Sale for the Horses.

55.     The Plaintiffs dispute that the Trainer is the owner of the Horses and that he is the authorized agent for the Owner pertaining to the ownership of the Horses.

56.     This request for declaration deals with a present controversy as to the facts and matters of law set forth herein.

57.     The parties have an actual and present adverse interest in the declaration sought hereby which adverse interest is properly before the Court.

WHEREFORE, Owner and Lender request that this Court enter a judgment declaring:

(A)  that Owner is the owner of the Horses;

(B)  that Lender is entitled to proceeds for the unauthorized sale of the Horses and that Lender has a valid lien on the Horses;

(C)  that Owner is entitled to the Horses' earned revenues and the value of "Power Escapade", the horse Trainer gave away;

(D)  that an injunction shall be entered enjoining Trainer from entering the Horses in any race or further training the Horses;

(E)  that a receiver shall be appointed to care for the Horses to be paid by Owner upon Owner being declared the actual and legal owner of the Horses;

(F)  that Lender holds a valid lien on the Horses;

(G)  the award of supplemental relief for damages, attorney's fees and court costs; and

(H)  all other relief the court deems appropriate under the circumstances.

## COUNT II: DECLARATORY JUDGMENT AND SUPPLEMENTAL RELIEF

58.     The Plaintiff, Ozra Esfandiari (Lender) hereby re-alleges and incorporates by reference paragraphs 1 through 14 above, as if fully set forth herein.

59.     This is a cause of action brought by the Plaintiff, Ozra Esfandiari, against Defendant, Dennis Manning (Trainer), for declaratory judgment and supplemental relief.

60.     In February of 2020, Lender desired to purchase a horse and have Trainer train the horse.

61.     On <u>February 18, 2020</u>, Lender delivered $16,000.00 via check into Trainer's Horsemen's Account at Gulfstream Park.   A copy of Lender's check to Trainer's Horsemen's account is attached hereto as Exhibit "C" and made a part hereof by reference.

62.     On <u>February 20, 2020</u>, Lender delivered $16,020.00 via wire transfer into Trainer's Horsemen's account at Gulfstream Park. A copy of the wire transfer record from Lender to Trainer is attached hereto as Exhibit "D" and made a part hereof by reference.

63.     Trainer claimed "Allgorilla" for Lender and paid a purchase price of $16,000.00.

64.     Trainer named himself as the owner of the horse.

65.     Lender demanded that she be named the owner of "Allgorilla" but the Trainer has refused.

66.     Lender has demanded the return of her $32,020.00, but the Trainer has refused.

67.     Lender has a bona fide, actual, present, and practical need for a declaration by this Court stating that Lender is the owner of "Allgorilla".

68.     Lender asserts that she is the owner of "Allgorilla".

69.     Trainer asserts that he is the owner of "Allgorilla".

70.     The parties are in doubt as to the ownership of "Allgorilla".

71.      This request for declaration deals with a present controversy as to the facts and matters of law set forth herein.

72.     The parties have an actual and present adverse interest in the declaration sought hereby which adverse interest is properly before the Court.

WHEREFORE, the Lender requests that this Court enter a judgment declaring:

(A)  that Lender is the owner of "Allgorilla".

(B)  that Lender is entitled to the excess proceeds kept by the Trainer for the purchase of "Allgorilla".

(C)  that an injunction shall be entered enjoining the Trainer from entering "Allgorilla" in any race or further training the horse;

(D)  that a receiver shall be appointed to care for "Allgorilla" to be paid by the Lender upon the Lender being declared the actual and legal owner of "Allgorilla";

(E)  the award of supplemental relief for damages, attorney's fees and court costs; and

(F)  all other relief the court deems appropriate under the circumstances.

## COUNT III: UNJUST ENRICHMENT

73.    The Plaintiffs, Robert Parhizgar (Owner) and Ozra Esfandiari (Lender) hereby re-alleges and incorporate by reference paragraphs 1 through 71 above, as if fully set forth herein.

74.    This is an action by the Plaintiffs against Dennis Manning for unjust enrichment.

75.    The essential elements included under a theory of unjust enrichment are a benefit conferred upon a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *Ruck Bros. Brick, Inc. v. Kellogg & Kimsey, Inc.*, 668 So. 2d 205, 207 (Fla. 2d DCA 1995).

76.    The Defendant, Dennis Manning, has been unjustly enriched by generating revenue from the horses named herein by way of entering the horses into races and earning "purse" proceeds and by the sale of the horses when the horses were owned by the Plaintiffs.

77.    As a result of the Defendant's unjust enrichment, the Plaintiffs have suffered monetary damages.

WHEREFORE, the Plaintiffs request that this Court enter a judgment against the Defendant, Dennis Manning and in favor of the Plaintiffs, awarding all damages, restitution, and all other relief the Court deems just.

## COUNT IV: TEMPORARY AND PERMANENT INJUNCTION

78.    The Plaintiffs, Robert Parhizgar and Ozra Esfandiari, hereby re-allege and incorporates by reference paragraphs 1 through 76 above, as if fully set forth herein.

79.    This is a cause of action brought by the Plaintiffs, Robert Parhizgar and Ozra Esfandiari, against Defendant, Dennis Manning, for temporary and permanent injunctive relief.

80.    "A temporary injunction may be granted only if the movant establishes (1) a likelihood of irreparable harm; (2) unavailability of an adequate legal remedy; (3) a substantial likelihood of succeeding on the merits; and (4) considerations of the public interest support the entry of the injunction." *Masters Freight, Inc. v. Servco, Inc.*, 915 So. 2d 666, 666 (Fla. 2d DCA 2005) (citing *Snibbe v. Napoleonic Soc'y of Am., Inc.*, 682 So. 2d 568, 570 (Fla. 2d DCA 1996)).

81.    The Plaintiffs are in need of a temporary and permanent injunction enjoining Dennis Manning from continuing to possess, train, race and sell the horses named herein.

82.    If Dennis Manning continues to possess, train, race and sell the horses named herein, the Plaintiffs will suffer irreparable harm.

83.    The Plaintiffs do not have an adequate legal remedy to prevent Dennis Manning from possessing, training, racing and selling the horses named herein, in the absence of a Court-ordered injunction precluding the Defendant from doing so.

84.    The Plaintiffs have a substantial likelihood of succeeding on the merits, because the Plaintiffs are the rightful, legal owners of the horses.

85.     The public interest supports the entry of an injunction precluding the Defendant from continuing to possess, train, race and sell the horses named herein.

WHEREFORE, the Plaintiffs, Robert Parhizgar and Ozra Esfandiari, request that this Court enter a temporary and permanent injunction in this case enjoining Dennis Manning from possessing, training, racing and selling the horses named herein, and awarding any additional relief the Court deems just and proper.

## COUNT V: FRAUDULENT MISREPRESENTATION

86.     The Plaintiff, Robert Parhizgar hereby re-alleges and incorporates by reference paragraphs 1 through 56 above, as if fully set forth herein.

87.     This is a cause of action brought by the Plaintiff, Robert Parhizgar, against Defendant, Dennis Manning, for fraudulent misrepresentation.

88.     "[T]here are four elements of fraudulent misrepresentation: '(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in *reliance* on the representation.'" *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (Emphasis in original) (quoting *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985)).

89.     The Defendant has made false statements concerning material facts to the Plaintiff, Robert Parhizgar, by representing to the Owner that by executing the Bills of Sale, the Trainer would only be the "paper" owner of the Horses, and that the actual and beneficial ownership of the Horses would remain with the Owner.

90.     At the time the Defendant made the misrepresentations to the Plaintiff, the Defendant knew that the statements were false or, in the alternative, made the statements with reckless disregard as to their truth or falsity.

12

91.     At the time the Defendant made the misrepresentations, the Defendant knew that the representations were false and that he intended to exercise dominion, control and actual legal ownership over the Horses, and the Defendant was in a better position to ascertain the truth of the statements than the Plaintiff.

92.     The above referenced false representations were made by the Defendant with the intent that the representations would induce the Plaintiff to act by executing the Bills of Sale for the Horses.

93.     The Plaintiff has been injured and has suffered monetary damages as a result of his reliance on the false or negligent misrepresentations by the Defendant.

WHEREFORE, the Plaintiff, Robert Parhizgar, requests that this Court enter a judgment against the Defendant and in favor of the Plaintiff, awarding all damages, restitution, and all other relief the Court deems just.

## COUNT VI: CONVERSION

94.     The Plaintiff, Robert Parhizgar hereby re-alleges and incorporates by reference paragraphs 1 through 46 above, as if fully set forth herein.

95.     This is a cause of action brought by the Plaintiff, Robert Parhizgar, against Defendant, Dennis Manning, for conversion.

96.     Where there is a taking of chattels with intent to exercise over them an ownership inconsistent with the real owner's right of possession, there is a conversion. Any act of a person in asserting a right of dominion over chattels which is inconsistent with the right of the owner may amount to a conversion. *Star Fruit Co. v. Eagle Lake Growers, Inc.,* 33 So. 2d 858 (Fla. 1948); *Quitman Naval Stores Co. v. Conway*, 58 So. 840 (Fla. 1912).

97.     The Defendant converted the Horses and the horse KP Creed for his own use and benefit, when the Horses and KP Creed were rightfully owned by the Plaintiff, Robert Parhizgar.

98.     The Defendant has converted the race proceeds generated by the Horses and the horse KP Creed for his own use and benefit, when the Horses and KP Creed were rightfully owned by the Plaintiff, Robert Parhizgar.

99.     The Defendant gave away or sold the Horses named Power Escape, Sir Seamus, KP Creed, Smoke Alarm, and Drillomatic and converted the proceeds from the sale of the Horses to his own use and benefit when the Horses were rightfully owned by the Plaintiff, Robert Parhizgar.

100.    The Horses listed in paragraph 98 were sold for approximately $115,000.00.

101.    The Defendant, Dennis Manning, received and kept revenue generated from the horses named herein by way of entering the horses into races and earning "purse" proceeds for approximately $90,915.00.

102.    As a result of the Defendant's conversion of the Horses, Plaintiff, Robert Parhizgar has suffered damages.

WHEREFORE, the Plaintiff, Robert Parhizgar, requests that this Court enter a judgment against the Defendant and in favor of the Plaintiff, awarding all damages, restitution, and all other relief the Court deems just.

## COUNT VII: CONVERSION

103.    The Plaintiff, Ozra Esfandiari, hereby re-alleges and incorporates by reference paragraphs 1 through 63 above, as if fully set forth herein.

104.    This is a cause of action brought by the Plaintiff, Ozra Esfandiari, against Defendant, Dennis Manning, for conversion.

14

105.    Where there is a taking of chattels with intent to exercise over them an ownership inconsistent with the real owner's right of possession, there is a conversion. Any act of a person in asserting a right of dominion over chattels which is inconsistent with the right of the owner may amount to a conversion. *Star Fruit Co. v. Eagle Lake Growers, Inc.*, 33 So. 2d 858 (Fla. 1948); *Quitman Naval Stores Co. v. Conway*, 58 So. 840 (Fla. 1912).

106.    In February of 2020, the Plaintiff desired to purchase a horse and have the Defendant train the horse.

107.    On February 18, 2020, the Plaintiff delivered $16,000.00 via check into the Defendant's Horsemen's Account at Gulfstream Park, a thoroughbred racetrack in Miami. A copy of Lender's check to Trainer's Horsemen's account is attached hereto as Exhibit "C" and made a part hereof by reference.

108.    On February 20, 2020, the Plaintiff delivered $16,020.00 via wire transfer into the Defendant's Horsemen's account at Gulfstream Park. A copy of the wire transfer record from Lender to Trainer is attached hereto as Exhibit "D" and made a part hereof by reference.

109.    With the use of the funds provided to the Defendant from the Plaintiff, the Defendant claimed the horse named "Allgorilla" in a claiming race for the Plaintiff and paid a purchase price of $16,000.00 for the horse.

110.    The Defendant then named himself as the owner of the horse, rather than name the Plaintiff the owner of the horse.

111.    The Plaintiff demanded that she be named the owner of "Allgorilla" but the Defendant refused.

112.    The Plaintiff demanded the return of her $32,020.00, but the Defendant has refused to return the money.

113.   The Defendant converted the horse "Allgorilla" and the funds transferred to the Defendant by the Plaintiff for his own use and benefit, when the horse and funds are rightfully owned by the Plaintiff, Ozra Esfandiari.

114.   As a result of the Defendant's conversion of the horse and funds, Plaintiff, Ozra Esfandiari has suffered damages.

WHEREFORE, the Plaintiff, Ozra Esfandiari, requests that this Court enter a judgment against the Defendant and in favor of the Plaintiff, awarding all damages, restitution, and all other relief the Court deems just.

**INTENTIONALLY LEFT BLANK**

VERIFICATION

I HEREBY CERTIFY that I have read the contents and allegations of the foregoing Verified Complaint and verify that all factual allegations are true and correct.

Ozra Esfandiari

STATE OF *Nevada*

COUNTY OF *Clark* _____

Sworn to and subscribed before me this 18 day of May, 2020 by Ozra Esfandiari who is personally known to me or has produced *Texas Drivers License* as identification.

LEE TUAZON
NOTARY PUBLIC
STATE OF NEVADA
My Commission Expires: 03-04-2023
Certificate No: 15-2689-1

NOTARY PUBLIC, STATE OF *Nevada*
My Commission Expires: 03/04/2023

I HEREBY CERTIFY that I have read the contents and allegations of the foregoing Verified Complaint and verify that all factual allegations are true and correct.

Robert Parhizgar

STATE OF *Nevada*

COUNTY OF *Clark* _____

Sworn to and subscribed before me this 18 day of May, 2020 by Robert Parhizgar who is personally known to me or has produced *Texas Drivers License* as identification.

LEE TUAZON
NOTARY PUBLIC
STATE OF NEVADA
My Commission Expires: 03-04-2023
Certificate No: 15-2689-1

NOTARY PUBLIC, STATE OF *Nevada*
My Commission Expires: 03/04/2023

Frank Charles Miranda, P.A.

*Frank C. Miranda*
Frank C. Miranda, Esquire
F.B.N.: 111627
3226 W. Cypress St.
Tampa, FL 33607
Telephone: (813) 254-2637
Facsimile: (813) 258-9873
Primary Email: frank@fcmlaw.com
Secondary Email: lourdes@fcmlaw.com
Attorney for Plaintiffs Robert Parhizgar and
Ozra Esfandiari



# **Jurat Certificate**

State of _Nevada_

County of _Clark_

Subscribed and sworn to (or affirmed) before me on this _18_

day of _May_ , 20_20_, by _Ozra Esfandiari and Robert Parhizgar_

Notary Signature _____

*Place Seal Here*

```
LEE TUAZON
NOTARY PUBLIC
STATE OF NEVADA
My Commission Expires: 03-04-2023
Certificate No: 15-2689-1
```

## **Description of Attached Document**

Type or Title of Document _Verified Complaint_

Document Date _5/18/2020_

Number of Pages _8 Pgs. / 114 Items_

Signer(s) Other Than Named Above _N/A_

DSG3018 (Rev 00-2-15)